## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELTON NEAL AND RICHARD NAGELDINGER, *on behalf of themselves and a class of similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>700CREDIT, LLC,<br><br>Defendant. | Case No.:<br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Elton Neal and Richard Nageldinger, individually and on behalf of all others similarly situated ("Class Members"), upon personal knowledge of facts pertaining to Plaintiffs and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant 700Credit, LLC ("Defendant," also referred to as "700Credit").

## NATURE OF THE ACTION

1.      The release, disclosure, and publication of sensitive, private data can be devastating. It is not only an intrusion of privacy and a loss of control, but also a harbinger of identity theft. For victims of a data breach, the risk of identity theft

more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach. With the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, collect government benefits, or secure driver's licenses in the victims' names. Data breaches force victims to maintain constant vigilance over the misuse of their information.

2.     Plaintiffs bring this class action individually and on behalf of all other individuals who had their sensitive personally identifying information, including but not limited to names and Social Security numbers (SSN) (collectively, "PII" or "Personal Information"), disclosed to unauthorized third parties during a data breach experienced by 700Credit on or around October 25, 2025.

3.     700Credit is the largest credit report provider in North America, offering soft pull credit data, identify verification, fraud detection and compliance solutions for vehicles in the United States.[2]

4.     On October 25, 2025, 700Credit discovered a network security incident that impacted some of its systems. After further investigation, and with the help of cybersecurity experts, Defendant discovered unauthorized access to its network

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, S.C. Lawyer (May 2014).
[2] *About us*, https://www.700credit.com/ (last visited Dec. 16, 2025).

occurred in October 2025.[3] This unauthorized access resulted in "personally identifiable information (PII) including name, address and social security number" being obtained by threat actors (the "Data Breach").[4]

5.     The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again have not been shared with Plaintiffs and Class Members, who retain a vested interest in ensuring that their Personal Information remains protected.

6.     Defendant was aware of or should have known of its data security shortcomings. It collects and maintains sensitive Personal Information about its customers, including SSNs and financial information. It requires customers to provide this highly confidential information in connection with using 700Credit's products and services.

7.     Despite knowing how valuable customer information is and the damage that would result from its release, Defendant failed to adequately protect Plaintiffs' and Class Members' PII. This PII was compromised due to Defendant's negligent

---

[3] Ionut Arghire, *700Credit Data Breach Impacts 5.8 Million Individuals,* SECURITYWEEK NETWORK (Dec. 15, 2025), https://www.securityweek.com/700credit-data-breach-impacts-5-8-million-individuals/ (last visited Dec. 16, 2025).
[4] Bill Toulas, *700Credit data breach impacts 5.8 million vehicle dealership customers*, BLEEPING COMPUTER (Dec. 15, 2025), https://www.bleepingcomputer.com/news/security/700credit-data-breach-impacts-58-million-vehicle-dealership-customers/ (last visited Dec. 16, 2025).

and/or careless acts and omissions and its utter failure to protect customers' sensitive data.

8.      Hackers targeted and obtained Plaintiffs' and Class Members' PII because it empowers criminals to exploit and steal the identities of Plaintiffs and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiffs and Class Members, will remain for their respective lifetimes.

9.      Defendant's failures to ensure that its servers and systems were adequately secure fell far short of its obligations and Plaintiffs' and Class Members' reasonable expectations for data privacy, jeopardized the security of Plaintiffs' and Class Members' Personal Information, and exposed Plaintiffs and Class Members to fraud and identity theft or the serious risk of fraud and identity theft.

10.     As a result of Defendant's conduct and the resulting Data Breach, Plaintiffs and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft or face the substantial and continuing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

11.     Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Personal Information that it collected and maintained.

## PARTIES

12.    Plaintiff Ethan Neal is an adult citizen of the State of California, and resides in Bakersfield, California.

13.    Plaintiff Neal obtained auto financing through North Bakersfield Toyota, which conducts credit inquiries through 700Credit. As a prerequisite for obtaining Defendant's services, the Plaintiff furnished his Private Information, either directly or indirectly, to the Defendant.

14.    As a result of the Data Breach, Plaintiff Neal has had to monitor his accounts and anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harm caused by the Data Breach.

15.    As is well documented by privacy and cyber experts, as result of the Data Breach, Plaintiff Neal is at present risk and will continue to be at increased risk of identity theft and fraud for years to come. Plaintiff Neal has a continuing interest in ensuring that his Personal Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

16.    Plaintiff Richard Nageldinger is an adult citizen of the State of New York, and resides in Elmira Heights, New York.

17.    Plaintiff Nageldinger obtained auto financing through Simmons Rockwell, which conducts credit inquiries through 700Credit. As a prerequisite for

obtaining Defendant's services, the Plaintiff furnished his Private Information, either directly or indirectly, to the Defendant.

18.     As a result of the Data Breach, Plaintiff Nageldinger has had to monitor his accounts and anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harm caused by the Data Breach.

19.     As is well document by privacy and cyber experts, as result of the Data Breach, Plaintiff Nageldinger is at present risk and will continue to be at increased risk of identity theft and fraud for years to come. Plaintiff Nageldinger has a continuing interest in ensuring that his Personal Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

20.     700Credit, LLC, is a Delaware limited liability company, with its principal place of business located at 26555 Northwestern Highway, Suite 301, Southfield, Michigan, 48033.

## JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT

21.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class Members, the action is a class action in which one or more Class Members are citizens of states

different from Defendant, and Defendant is not a government entity.

22.     The Court has personal jurisdiction over Defendant because Defendant has a principal office in Southfield, Michigan, operates in Michigan, conducts other significant business in Michigan, and otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in Michigan.

23.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a)(1)–(d) because, *inter alia,* Defendant has a principal place of business in this district; Defendant transacts substantial business, has agents, and is otherwise located in this district; and a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A.   700Credit Collects and Stores Personal Information

24.     700Credit is a fintech company providing credit-reporting, compliance, and consumer-engagement tools, headquartered in Southfield, Michigan.[5] Founded in 2000, 700Credit facilitates operations mainly for auto dealers, lenders, and retailers. It routinely collects highly sensitive Personal Information in the process of providing its products and services.

25.     Defendant is and was aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data privacy. It makes

---

[5] *Home Contact*, https://www.700credit.com/contact/ (last visited Dec. 16, 2025).

the promises and claims to "exercise great care to protect your personally identifiable information" on its website, including "industry standard techniques such as firewalls, encryption, intrusion detection and site monitoring" and "restrict[ing] access to your personally identifiable information to employees who need access to fulfill their job duties."[6]

26.     700Credit's Privacy Policy makes clear that it will only grant Personal Information access to third parties with customer consent, stating "we will not sell or share personal information that you provide to us except for the specific purposes for which you shared it."[7]

27.     700Credit's statements concerning privacy and data security make clear that it was aware of the need to safeguard the sensitive Personal Information entrusted to it as a necessary part of its business operations.

**B.    The Data Breach**

28.     On or about October 25, 2025, 700Credit detected unauthorized activity on its systems.

29.     According to public reporting, 700Credit activated its cybersecurity response protocols, and engaged cybersecurity experts to investigate, contain, and remediate the incident. It also notified law enforcement authorities. It began

---

[6] *Privacy Policy*, https://www.700credit.com/privacy-policy/ (last visited Dec. 16, 2025).
[7] *Id.*

notifying impacted dealerships of the incident on November 21, 2025, and will begin sending written notification letters to affected people on December 22, 2025.[8]

30.    700Credit's investigation has revealed evidence that an unauthorized party obtained confidential, proprietary, and personal information, including SSNs, through unauthorized queries on databases storing applicant data. On information and belief, and given the nature of 700Credit's business, the compromised data likely includes names, contact information, SSNs, addresses, and other financial details.

31.    Subsequent reports indicate that the breach impacted over 5.8 million individuals' personal information was reached by hackers.[9]

32.    The Personal Information stolen in the breach necessarily places affected individuals at heightened risk of identity theft, phishing attacks, and financial fraud. As of this filing, 700Credit has indicated that it "is providing access to credit monitoring services for twelve (12) months, through TransUnion, to individuals whose personal information was potentially affected by this incident, at no cost to these individuals."[10] However, 700Credit's assertions mention no support

---

[8] Ionut Arghire, *700Credit Data Breach Impacts 5.8 Million Individuals*, SECURITYWEEK NETWORK (Dec. 15, 2025),
https://www.securityweek.com/700credit-data-breach-impacts-5-8-million-individuals/ (last visited Dec. 16, 2025).
[9] *Id.*
[10] *700Credit - Notice of Data Event - ME*,
https://www.documentcloud.org/documents/26377802-700credit-notice-of-data-event-me/ (last visited Dec. 16, 2025).

services after the 12 month pass.

33. To date, 700Credit has failed to take adequate steps to protect individuals affected by the Data Breach, instead putting the burden on Plaintiffs and Class Members to take action to mitigate their damages. For example, on the Notice of Data Event document, 700Credit tasks consumers with monitoring account statements and credit reports, and making time-consuming phone calls in the event of a concern.[11]

**C.  Impact of the Data Breach**

34. As a result of the Data Breach, Plaintiffs and Class Members had their most sensitive Personal Information accessed and acquired by cybercriminals, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, the value of their time reasonably incurred to remedy or mitigate the effects of the attack, and unauthorized use of their Personal Information.

35. The actual extent, scope, and impact of the Data Breach remain uncertain. Unfortunately for Plaintiffs and Class Members, the damage is already done because their sensitive Personal Information has been disclosed to unauthorized persons during the Data Breach.

36. 700Credit knew or should have known that its affected systems and/or

---

[11] *Id.*

servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, 700Credit failed to timely make changes to its data security systems, privacy policies, and its IT systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

37. The Data Breach creates a heightened security concern for Plaintiffs and Class Members because their SSNs, and likely their financial information and other sensitive information, were potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. To obtain a new number, a breach victim must demonstrate ongoing harm from misuse of his or her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

38. Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, SSNs "can be an identity thief's most valuable piece of consumer information."[12] TIME quotes data security researcher Jim Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your

---

[12] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[13]

39.    700Credit had a duty to keep Plaintiffs' and Class Members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiffs and Class Members provided their Personal Information to 700Credit with the understanding that 700Credit would comply with its privacy policies and protocols, the values it espouses regarding privacy (e.g., on its webpage entitled *Privacy Policy*, discussed *supra*), and its obligations to keep such information confidential and secure from unauthorized disclosures.

40.    Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in 700Credit's industry.

### D.    Theft of Personal Information Has Serious Consequences for Victims

41.    Hostile attacks to obtain data are by no means new, and they should not be unexpected by business that collect and monetize consumer data.

42.    Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in .

---

[13] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

. . systems either online or in stores."[14] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

43.    These types of attacks should be anticipated by companies that store sensitive PII, like 700Credit, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

44.    Theft of Personal Information is serious. The Federal Trade Commission (FTC) has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[15]

45.    Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to

---

[14] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[15] *See* Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Oct. 22, 2025).

obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[16]

46.    According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[17]

47.    Personal Information is a valuable property right.[18] The value of

---

[16] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, FED. TRADE COMM'N CONSUMER ADVICE, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited Aug. 22, 2025).

[17] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[18] *See* Marc van Lieshout, *The Value of Personal Data*, 457 INTERNATIONAL FEDERATION FOR INFORMATION PROCESSING 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"),

sensitive Personal Information as a commodity is measurable.[19] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[20]

48.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information reportedly exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

49.     Identity theft victims are frequently required to spend many hours and

---

https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[19] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

20 OECD, Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD Digital economy papers, no. 220 at 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

50.    Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[21]

51.    There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[22]

52.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with

---

[21] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[22] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

the company.

53.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[23]

54.     It is within this context that Plaintiffs and all other Class Members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

E.     **700Credit Failed to Act in the Face of a Known Risk of a Data Breach**

55.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendant failed to take reasonable steps to adequately protect Personal Information, leaving its clients (and potentially others) exposed to risk of fraud and identity theft.

56.     700Credit is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing software services and products is highly sensitive. As a company that requires consumers to provide highly sensitive and identifying information, 700Credit is aware of the

---

[23] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

57.    700Credit was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

58.    Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

59.    The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

60.    Despite the fact that 700Credit was on notice of the very real possibility of data theft, including through a prior data breach, it still failed to make necessary changes, and permitted a massive intrusion to occur that resulted in disclosure of Plaintiffs' and over 17 million other Class Members' Personal Information to criminals.

61.    Defendant permitted Class Members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

62.     Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[24]

63.     As a result of the events detailed herein, Plaintiffs and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including, but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

64.     Victims of the Data Breach have likely already experienced harms and are subject to a substantial and ongoing risk of harm, including identity theft and fraud.

65.     As a result of 700Credit's failure to ensure that its impacted systems

---

[24] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, Reuters (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiffs' and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

66.    Plaintiffs bring this action individually and on behalf of the following Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All residents of the United States who were impacted by the Data Breach, including all persons who are sent notice by Defendant that their Personal Information was compromised as a result of the Data Breach.
>
> **California Subclass**
> All residents of California who were impacted by the Data Breach, including all persons who are sent notice by Defendant that their Personal Information was compromised as a result of the Data Breach.

67.    The above-defined classes are referred to hereafter as the "Class" or "Classes." Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and court staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

68.    **Numerosity**: While the precise number of Class Members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class is reported to include over 5 million members who are geographically dispersed.

69.    **Typicality**: Plaintiffs' claims are typical of Class Members' claims. Plaintiffs and all Class Members were injured through Defendant's uniform misconduct, and Plaintiffs' claims are identical to the claims of the Class Members they seek to represent. Accordingly, Plaintiffs' claims are typical of Class Members' claims.

70.    **Adequacy**: Plaintiffs' interests are aligned with the Class Plaintiffs seek to represent, and Plaintiffs have retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiffs and undersigned counsel intend to prosecute this action vigorously. The Class's interests are well represented by Plaintiffs and undersigned counsel.

71.    **Superiority**: A class action is the superior—and only realistic— mechanism to fairly and efficiently adjudicate Plaintiffs' and other Class Members' claims. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class Members

individually to effectively redress Defendant's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents the potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

72.   **Commonality and Predominance**: The following questions common to all Class Members predominate over any potential questions affecting individual Class Members: whether Defendant engaged in the wrongful conduct alleged herein; whether Defendant's data security practices resulted in the disclosure of Plaintiffs' and other Class Members' Personal Information and the Data Breach; whether Defendant violated privacy rights and invaded Plaintiffs' and Class Members' privacy; and whether Plaintiffs and Class Members are entitled to damages, equitable relief, or other relief and, if so, in what amount. Given that Defendant engaged in a common course of conduct as to Plaintiffs and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

73.   **Injunctive and Declaratory Relief**: Consistent with Fed. R. Civ. P.

23(b)(2), Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiffs and the Nationwide Class**
**or, Alternatively, the California Class)**

74.    Plaintiffs reallege and incorporate the foregoing paragraphs as though they were fully set forth herein.

75.    Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiffs and Class Members.

76.    Defendant knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiffs and Class Members, and to not ensure that its servers and systems, and the Personal Information, were secure. These risks were reasonably foreseeable to Defendant, including because Defendant has previously experienced a data breach.

77.    Defendant owed duties of care to Plaintiffs and Class Members whose Personal Information had been entrusted to it.

78.    Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate data security. Defendant had a duty to safeguard Plaintiffs' and Class Members' Personal Information and to ensure that

it adequately protected Personal Information. Defendant breached this duty.

79.     Defendant's duty of care arises from its knowledge that its customers entrust it with the highly sensitive Personal Information that 700Credit is required to (and represents that it will) handle securely.

80.     Only 700Credit was positioned to ensure that its systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiffs and Class Members have now suffered.

81.     A "special relationship" exists between Defendant, on the one hand, and Plaintiffs and Class Members, on the other hand. Defendant entered a "special relationship" with Plaintiffs and Class members by agreeing to accept, store, and have access to the sensitive Personal Information provided by Plaintiffs and Class Members in connection with obtaining or utilizing 700Credit's services.

82.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

83.     Defendant acted with wanton disregard for the security of Plaintiffs' and Class Members' Personal Information.

84.     The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that Defendant's breach

would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

85.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have been harmed and face a substantial and continuing risk of harm.

86.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II
### BREACH OF IMPLIED CONTRACT
**(On Behalf of Plaintiffs and the Nationwide Class
or, Alternatively, the California Class)**

87.    Plaintiffs reallege and incorporate the foregoing paragraphs as though they were fully set forth herein.

88.    700Credit provided or provides services, and Plaintiffs and Class Members provided their Personal Information to 700Credit as customers utilizing those services, or in otherwise transacting with Defendant.

89.    In connection with their business relationship, Plaintiffs and Class Members entered into implied contracts with 700Credit.

90.    Pursuant to these implied contracts, Plaintiffs and Class Members provided 700Credit with their Personal Information. In exchange, 700Credit agreed, among other things, to: (1) take reasonable measures to protect the security and

confidentiality of Plaintiffs' and Class Members' Personal Information; and (2) protect Plaintiffs' and Class Members' Personal Information in compliance with federal and state laws and regulations and industry standards.

91.    to these implied contracts, Plaintiffs and Class Members provided 700Credit with their Personal Information. In exchange, 700Credit agreed, among other things, to: (1) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class Members' Personal Information; and (2) protect Plaintiffs' and Class Members' Personal Information in compliance with federal and state laws and regulations and industry standards

92.    The protection of Personal Information was a material term of the implied contracts between Plaintiffs and Class Members, on the one hand, and 700Credit, on the other hand. Had Plaintiffs and Class Members known that 700Credit would not adequately protect its customers' Personal Information, they would not have done business with 700Credit and utilized its services.

93.    Plaintiffs and Class Members performed their obligations under the implied contract when they provided 700Credit with their Personal Information.

94.    Necessarily implicit in the agreements between Plaintiffs and Defendant was 700Credit's obligation to take reasonable steps to secure and safeguard Plaintiffs' and Class Members' Personal Information.

95.    Defendant breached its obligations under its implied contracts with

Plaintiffs and Class Members by failing to implement and maintain reasonable security measures to protect their Personal Information.

96.   Defendant's breach of its obligations of its implied contracts with Plaintiffs and Class Members directly resulted in the Data Breach.

97.   The damages sustained by Plaintiffs and Class Members as described above were the direct and proximate result of Defendant's material breaches of its agreements.

98.   Plaintiffs and other Class Members were damaged by Defendant's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

## COUNT III
### UNJUST ENRICHMENT
**(On Behalf of Plaintiffs and the Nationwide Class or, Alternatively, the California Class)**

99.     Plaintiffs reallege and incorporate the foregoing paragraphs as though they were fully set forth herein.

100.    This claim is pleaded in the alternative to the implied contract claim.

101.    700Credit has profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiffs and Class Members to receive services and benefits from 700Credit.

102.    700Credit has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiffs and Class Members did not receive services of the quality, nature, fitness, or value represented by 700Credit and that reasonable consumers expected.

103.    700Credit has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiffs and Class Members.

104.    Equity and justice militate against permitting 700Credit to retain these profits and benefits.

105.    Plaintiffs and Class Members suffered injury as a direct and proximate result of 700Credit's unjust enrichment and seek an order directing 700Credit to disgorge these benefits and pay restitution to Plaintiffs and Class Members.

## COUNT IV
## DECLARATORY JUDGMENT
### (On Behalf of Plaintiffs and the Nationwide Class)

106.   Plaintiffs reallege and incorporate the foregoing paragraphs as though they were fully set forth herein.

107.   Plaintiffs and the Class have stated claims against Defendant based on negligence, breach of implied contracts and unjust enrichment.

108.   Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiffs and the Class, as evidenced by the Data Breach.

109.   As a result of the Data Breach, Defendant's systems are more vulnerable to unauthorized access and require more stringent measures to be taken to safeguard the PII of Plaintiffs and the Class going forward.

110.   Plaintiffs seek a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

**COUNT V**
**CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")**
**CAL. CIV. CODE SECTION 1798.150,** *et seq.*
**(On Behalf of Plaintiff and the California Subclass)**

111.    Plaintiff Elton Neal ("Plaintiff' for Count V) realleges and incorporate the foregoing paragraphs as though they were fully set forth herein.

112.    Plaintiff brings this claim individually and on behalf of members of the California Subclass.

113.    Defendant is a corporation organized or operated for the profit or financial benefit of its owners.

114.    Defendant collected consumers' Personal Information as defined in Cal. Civ. Code § 1798.140.

115.    By failing to protect Plaintiffs and California Subclass Members' PII from theft, exfiltration, or unauthorized disclosure, Defendant breached its duties to ensure adequate data security practices and violated § 1798.150 of the CCPA.

116.    Defendant has a duty to implement and maintain reasonable security measures to protect Plaintiffs and California Subclass Members' PII. Defendant failed to do so.

117.    Defendant's actions directly and proximately caused Plaintiffs and California Subclass Members' Private Information, including actual names, usernames, emails, other contact information, payment information, and SSNs to be exfiltrated, stolen, disclosed, or subjected to unauthorized access.

30

118. Plaintiffs and California Subclass Members seek equitable relief to ensure Defendant sufficiently secures customers' Private Information by implementing sufficient data security procedures and practices. Defendant continues to hold customers' PII. Plaintiffs and California Subclass Members have an interest in ensuring that their PII is reasonably protected, and Defendant has demonstrated its inability to sufficiently safeguard their information through the Data Breach.

119. An actual controversy now exists as to whether Defendant has implemented and maintained adequate security procedures and practices under the CCPA, in relation to the nature of the information.

120. Judicial intervention on this issue is necessary and appropriate under the circumstances to prevent further data breaches of Plaintiffs and California Subclass Members' PII.

121. Plaintiffs and California Subclass Members seek statutory damages or actual damages, including actual financial losses that are a result of the unlawful data breach.

<u>COUNT VI</u>
**CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.*
(On Behalf of Plaintiff and the California Subclass)**

122. Plaintiff Elton Neal ("Plaintiff" for Count VI) realleges and incorporate the foregoing paragraphs as though they were fully set forth herein.

123. Plaintiff brings this claim on behalf of himself and members of the

California Subclass.

124.   Defendant is a "person" under the UCL, Cal. Bus. & Prof. Code §
17201.

125.   Defendant violated the UCL through its unfair and unlawful business
practices.

126.   Under California's UCL, Cal. Bus. & Prof. Code Section 17200, *et seq.*,
a business practice is "unfair" when any injury it causes outweighs any benefits
provided to consumers and the injury is one that consumers themselves could not
reasonably have avoided. *Camacho v. Auto Club of Southern California*, 142 Cal.
App. 4th 1394, 1403 (2006).

127.   Defendant's failures to implement and maintain adequate security
measures do not benefit consumers. Defendant implemented insufficient,
ineffective, and cheap security measures. Defendant diverted the funds necessary to
ensure sufficient data security to its own profits, which lead to the Data Breach.
Defendant did not follow necessary protocols, policies, and procedures necessary for
security and encryption in line with industry standards and requirements. Defendant
concealed and omitted the material fact that they inadequately secured Plaintiff's
and Subclass Members' PII. Defendant concealed and omitted the material fact that
it did not fulfill its statutory obligations and common law duties for security of
Subclass Members' PII.

128.  Defendant was deceptive, misleading, and unreasonable, constituting an unfair business practice as interpreted by Cal. Bus. & Prof. Code Section 17200. Defendant's actions, as described herein, have resulted in harm to consumers who paid for Defendant's products and services inconsistent with reasonable expectations of data security.

129.  California's UCL finds a business practice is "unlawful" when Defendant breach state or federal law and the "unfair competition law makes [these breaches] independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Defendant engaged in "unlawful" business practices by violating the FTC Act, 15 U.S.C. § 45, the CCPA, Cal. Civ. Code § 1798.100, and California common law.

130.  Defendant's conduct, as alleged herein, is deceptive, misleading, unreasonable, and constitutes unlawful conduct. Defendant's conduct, including misrepresentations and omissions, was material because a regular consumer would be deceived about Defendant's data security standards. Defendant disregarded Plaintiff's and Subclass Members' rights. Defendant maliciously, intentionally, and knowingly violated California's Unfair Competition Law.

131.  Defendant's unfair and unlawful conduct directly and proximately caused Plaintiff's and Subclass Members' injuries, including lost money or property. But for Defendant's unfair and unlawful acts, Plaintiff's and Subclass Members'

harm would not have occurred, including a substantial and increased risk of identity theft, a diminished value for their personal information, and necessary time and expenses for monitoring fraudulent activity. Due to Defendant's unlawful conduct, as alleged herein, customers who entrusted their Private Information to Defendant have suffered injuries-in-fact as a result of the Data Breach.

132.   Defendant's failure to enforce proper security measures violates public policy, which is designed to protect consumers' data and to ensure that organizations entrusted with such data adopt necessary security protocols. These objectives are reflected in laws such as the FTC Act, 15 U.S.C. § 45, and the CCPA, Cal. Civ. Code § 1798.100. Consumers cannot reasonably avoid the injuries that Defendant caused as alleged herein. Victims' injuries outweigh potential benefits to the Defendant. Defendant could have furthered its business interests in a manner other than this unfair conduct.

133.   Plaintiff and California Subclass Members seek an order enjoining Defendant from continuing its unlawful, deceptive, and unfair business practices. Plaintiff and California Subclass Members seek an order requiring Defendant to implement and maintain sufficient data security practices in accordance with statutory and common law duties. Plaintiff and California Subclass Members request an award for restitution for the money wrongfully acquired by Defendant's unfair and unlawful practices.

## COUNT VII
**CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**CAL. CIV. CODE 1750, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

134.    Plaintiff Elton Neal ("Plaintiff" for Count VII) realleges and incorporate the foregoing paragraphs as though they were fully set forth herein.

135.    Plaintiff brings this claim on behalf of himself and members of the California Subclass.

136.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods. Cal. Civ. Code § 1770.

137.    Defendant's unlawful conduct described herein was intended to increase sales to the consuming public and violated Section 1770(a)(5), (a)(7), and (a)(9) of the CLRA by representing that the products and services have characteristics and benefits, such as appropriate data security, that they do not have.

138.    Defendant fraudulently deceived Plaintiff and the California Subclass by representing that its products and services have certain characteristics, benefits, and qualities which they do not have, namely data protection and security. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the California Subclass, specifically by advertising secure services when Defendant in fact failed to institute adequate security measures and neglected

system vulnerabilities that led to a data breach. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the California Subclass and depriving them of their legal rights and money.

139.   Defendant's claims about the products and services led and continue to lead consumers like Plaintiff and Subclass Members to reasonably believe that Defendant has implemented adequate data security measures when Defendant, in fact, neglected system vulnerabilities that led to a data breach and enabled hackers to access customers' PII.

140.   Defendant knew or should have known that adequate security measures were not in place and that consumers' PII was vulnerable to a data breach.

141.   Plaintiff and the California Subclass have suffered injury-in-fact as a result of and in reliance upon Defendant's false representations.

142.   Plaintiff and the California Subclass would not have purchased the products or used the services or would have paid significantly less for the products and services, had they known that their Personal Information was vulnerable to a data breach.

143.   Defendant's actions as described herein were done with conscious disregard of Plaintiff and the rights of California Subclass Members, and Defendant was wanton and malicious in its concealment of the same.

144.   Plaintiff and the California Subclass have suffered injury-in-fact and

have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for products and services advertised as secure, and consequentially entrusted Defendant with PII, when Defendant, in fact, failed to institute adequate security measures and neglected vulnerabilities that led to a data breach. Plaintiff and the California Subclass would not have purchased the products and services, or would not have provided Defendant with their PII, had they known that their Personal Information was vulnerable to a data breach.

145. Defendant should be compelled to implement adequate security practices to protect customers' PII. Additionally, Plaintiff and the members of the California Subclass lost money as a result of Defendant's unlawful practices.

146. Plaintiff and California Subclass Members seek all monetary and nonmonetary relief allowed by law including restitution; reasonable attorneys' fees and costs under California Code of Civil Procedures § 1021.5; and injunctive relief under the CLRA pursuant to Cal. Civ. Code 1782(d) and other appropriate equitable relief.

## PRAYER FOR RELIEF

Plaintiffs, themselves and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiffs as class representatives and undersigned counsel as class counsel;

B.    Award Plaintiffs and Class Members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C.    Award declaratory and injunctive relief as permitted by law or equity to assure that Class Members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D.    Award Plaintiffs and Class Members pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Award Plaintiffs and Class Members reasonable attorneys' fees, costs, and expenses, as allowable; and

F.    Award Plaintiffs and Class Members such other favorable relief as allowable under law or at equity.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: December 17, 2025          Respectfully submitted,
                                  By: */s/ Gregory A. Mitchell*
                                  E. Powell Miller (P39487)
                                  Emily E. Hughes (P68724)
                                  Gregory A. Mitchell (P68723)
                                  **THE MILLER LAW FIRM, P.C.**
                                  950 West University Drive
                                  Rochester, MI 48307
                                  T: (248) 841-2200
                                  epm@millerlawpc.com
                                  eeh@millerlawpc.com
                                  gam@millerlawpc.com

By: */s/ Thomas E. Loeser*
Thomas E. Loeser
**COTCHETT, PITRE & McCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
T: (206) 802-1272
tloeser@cpmlegal.com

*Counsel for Plaintiffs and the Proposed Class*